DocuSign Envelope ID: 0A9E1365-42B3-41D1-AE73-61B5D4330AF2

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6830
    Fax: (415) 436-7234
    Email: Kyle.Waldinger@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 21-0111 EMC |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| NAVEEN SOOD, | |
| Defendant. | |

I, Naveen Sood, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

1.     I agree to plead guilty to the single count of the captioned Information charging me with Securities Fraud, in violation of 18 U.S.C. § 1348. I agree that the elements of the offense of Securities Fraud under Section 1348 are as follows: (1) I executed or attempted to execute (a) a scheme or artifice to defraud any person as to a material matter or (b) a scheme or artifice for obtaining any money or property by means of false or fraudulent pretenses, representations, or promises that were

PLEA AGREEMENT
CR 21-0111 EMC

material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (2) the scheme or artifice was in connection with any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)); (3) I acted knowingly and with the intent to defraud, that is, the intent to deceive and cheat.

I agree that the maximum penalties are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison term | | 25 years |
| b. | Maximum fine | | $250,000 or twice the gross gain or gross loss, whichever is greater |
| c. | Maximum supervised release term | | 5 years |
| d. | Restitution | | In an amount determined by the Court |
| e. | Mandatory special assessment | | $100 per felony count |
| f. | Potential Deportation | | |
| g. | Forfeiture | | In an amount determined by the Court |

I acknowledge that it is virtually certain that pleading guilty will have consequences with respect to my immigration status if I am not a natural born citizen of the United States. Under federal law, a broad range of crimes are removable offense, including the offense to which I am pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and I understand that no one, including my attorney or the district court, can predict to a certainty the effect of this conviction on my immigration status. I nevertheless affirm that I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States. I also acknowledge that there are no identical or substantially similar charges to non-removable offenses to which the government would agree.

2. I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true: I admit that, during the April 2016 to November 2017 period, I obtained

PLEA AGREEMENT
CR 21-0111 EMC **[UNDER SEAL]**

2

material nonpublic information about Infinera Corporation ("Infinera") – a Bay Area technology company – and then engaged in transactions in Infinera securities. I obtained this material nonpublic information either directly or indirectly from two different individuals, who are identified here as "Individual 1" and "Individual 2." I admit that Infinera's common shares were registered pursuant to Section 12(b) of Securities Exchange Act of 1934 and publicly traded on the NASDAQ Stock Market under the ticker symbol INFN.

      In or about the late 2000s, I met and became friends with Individual 1. After that time, and until in or about 2020, I regularly socialized with Individual 1. At some point after I became friends with Individual 1, Individual 2 became a member of our social circle. I knew that Individual 2 worked at Infinera and that his job pertained in some way to finance and the company's revenues. I knew that Individual 2 regularly had access to confidential information about Infinera's quarterly financial results and financial prospects before that information became available to the public through the issuance of its quarterly earnings announcements.

      In or about April 2016, I had an outstanding debt to Individual 1 of more than $100,000. In or about that month, Individual 1 presented me with what he described as an opportunity to get cash to pay off that debt by trading in Infinera stock. Individual 1 told me that Infinera was going to report lower-than-expected revenues for the quarter. Although Individual 1 did not tell me explicitly at that time that Individual 2 was the source of this information, I concluded that Individual 2 was that source, and it was clear to me that he was. I knew that, whether based on his position at Infinera or on the company's policies, Individual 2 had a duty of confidentiality and loyalty to Infinera. Thereafter, Individual 1 regularly provided me with material nonpublic information about Infinera. At some point in 2016, Individual 1 explicitly stated that the source of his information regarding Infinera was Individual 2. Over time, the material nonpublic information I received regarding Infinera became more detailed. For example, on or about August 1, 2017, Individual 1 informed me via a WhatsApp text message that Infinera was going to report actual revenues of $176.8 million and projected revenues of $188 million for the second quarter and third quarter of 2017, respectively. Knowing that these figures fell short of Wall Street analysts' expectations, I purchased put options in Infinera prior to its earnings announcement on August 3, 2017. I later sold these securities for a profit of $36,455.

PLEA AGREEMENT  
CR 21-0111 EMC [**UNDER SEAL**]
3

In addition to personal meetings and telephone calls, Individual 1 and I initially used text messages or iMessages to communicate regarding our Infinera trading. By about mid-2016, we began to use the messaging application WhatsApp because of the encrypted nature of those communications.

Prior to Infinera's public earnings announcement on April 27, 2016, I used someone else's brokerage account to place a small trade in Infinera securities because I was not yet permitted to place trades on margin in my own account. This trade was based on material nonpublic information that I obtained from Individual 1 that I knew originated from Individual 2. Thereafter, between July 2016 and November 2017, I used my own brokerage account to purchase and sell Infinera securities (generally through short sales of stock and put options) based on material nonpublic information that I obtained from Individual 1 that I knew originated from Individual 2. Specifically, I engaged in Infinera securities transactions in my own account prior to Infinera's public earnings announcements on July 27, 2016, October 26, 2016, February 9, 2017, August 3, 2017, and November 8, 2017. Based on the stock price drop after the announcements in April 2016, July 2016, and August 2017 and the particular positions that I took in Infinera stock before those announcements, I made trading profits of approximately $3,543, $175,312.02, and $36,455, respectively. My trading in advance of the October 2016, February 2017, and November 2017 announcements, however, resulted in trading losses of approximately $135,583, $54,469, and $9,369, respectively. During the summer and fall of 2016, I used the equivalent of some of my trading gains from Infinera securities transactions to send wire transfers to Individual 1 totaling approximately $160,000 as payment toward the prior existing debt I owed to him.

After Individual 1 began providing me with material nonpublic information from Individual 2 regarding Infinera in April 2016, I shared that information with another friend, who is identified here as "Individual 3." (Individual 3 and I had been good friends for several years and saw each other socially on a regular basis.) In or about July 2016, I told Individual 3 that Infinera was going to "miss" market expectations and that Individual 3 should short the stock. In my conversations with Individual 3, I made it clear that I had received the information from Individual 1, who I believed had obtained it from Individual 2. Individual 3 knew Individual 1. I do not believe that he knew Individual 2, but I believe that he knew of Individual 2 and that Individual 2 worked at Infinera. I believe that on at least two occasions Individual 3 told me that he engaged in Infinera securities transactions after receiving this

PLEA AGREEMENT
CR 21-0111 EMC **[UNDER SEAL]**

4

information from me. I also regularly shared the information that I obtained from Individual 1 with other individuals, including the two individuals identified here as "Individual 4" and "Individual 5." In my conversations with Individual 4 and Individual 5, I made it clear that Individual 1 was giving me the information, the information was not public, and the information originated from an Infinera insider. As with Individual 3, Individual 4 did not know Individual 2, but I believe he knew who Individual 2 was. With respect to Individual 5, I do not believe that I mentioned Individual 2's name, because Individual 5 neither knew Individual 2 nor knew who he was. I also believe that Individual 3 provided Individual 5 with material nonpublic information about Infinera that I had relayed to Individual 3. On at least one occasion, I had a telephone conversation with Individual 3 and Individual 5 in which we discussed which options positions we were going to take in advance of an Infinera earnings announcement.

Individual 3 worked in Fortinet's sales division. In or about October 2016, Individual 3 told me that he had heard from a neighbor who was a former Fortinet employee that Fortinet was going to "pre-announce" its quarterly financial results and that the company would miss its earnings target. I passed along the information that I received from Individual 3 to Individual 1. I gave Individual 1 the information intending for him to trade on it and hoping he would reduce my debt if he profited from the trade. When I passed the information from Individual 3 on to Individual 1, I told Individual 1 that Individual 3 was my source for this information. Based on my prior conversations with Individual 1, I believe Individual 1 knew that I had previously passed on to Individual 3 material nonpublic information regarding Infinera that I had obtained from Individual 1.

Based on the amounts set forth above, I agree that gains I made from trading based on material nonpublic information belonging to Infinera amount to approximately $215,000. I agree that the Court may attribute this amount to me under Section 2B1.1 of the United States Sentencing Guidelines, which translates to a corresponding Total Offense Level of 17 before any reduction for acceptance of responsibility.

I admit that the information that I obtained with respect to Infinera in advance of Infinera's earnings announcements was confidential information owned by the company and that I therefore participated in a scheme to embezzle or convert confidential information from Infinera by wrongfully taking that information directly or indirectly from a company insider, putting it to my own use, and

PLEA AGREEMENT 5
CR 21-0111 EMC **[UNDER SEAL]**

providing it to others, all for the purpose of profiting from transactions in Infinera securities.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4. I agree to give up my right to appeal my conviction, including constitutional challenges to the statute of conviction. I agree to give up my right to appeal the judgment and all orders of the Court. I also agree to give up my right to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution, reserving only my right to claim that my sentence violated this plea agreement, applicable law, or the Constitution. I reserve my right to claim that my counsel was ineffective. I understand that this waiver includes, but is not limited to, any and all constitutional or legal challenges to my conviction and guilty plea, including arguments that the statute to which I am pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support my plea of guilty.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective.

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. In the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of this Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court proceeding, shall be admissible against me in any subsequent proceeding, including at trial. In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding.

7. I understand that the Court must consult the United States Sentencing Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I

also understand that the Court is not bound by the Guidelines calculations below; the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask to withdraw my guilty plea. I further agree that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea. I agree that the Sentencing Guidelines offense level should be calculated as set forth below, and that other than joining in a possible government downward departure pursuant to U.S.S.G. § 5K1.1, I will not ask for any other adjustment to or reduction in the offense level or for a downward departure from the Guidelines range as determined by the Court. However, I also reserve my right to argue for a variance from the Guidelines range determined by the Court based on 18 U.S.C. § 3553(a) factors. I understand that the government is free to oppose any such request. The parties have reached no agreement regarding my Criminal History Category.

    a.    Base Offense Level, U.S.S.G. § 2B1.1(a)(1): 7

    b.    Gain from the offense exceeded $150,000, U.S.S.G. § 2B1.1(b)(1)(F): +10

    c.    Acceptance of Responsibility:

        If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing: -3

    d.    Adjusted Offense Level: 14

    8.    I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offense and the sentencing decision, including any victim impact statements and letters from the victim corporation Infinera, and/or its employees or agents. I agree that, based on the nature of the offense, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

Special Condition (Searches)

The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any

property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

9. I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. I agree to pay the special assessment at the time of sentencing.

I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I understand that the Court will not consider my economic circumstances in determining the restitution amount. I agree to pay restitution in an amount to be set by the Court at the time of sentencing.

Any restitution payments shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

I understand that the restitution described above creates a lien in favor of the United States on all property and rights to property I may possess upon entry of judgment and continues for the later of 20 years from the entry of judgment or 20 years after release from imprisonment or until the debt is paid in full. I further understand the government will record a notice of the lien in any county where I reside or have property. I further understand that this order of restitution cannot be discharged in bankruptcy and that if I default on the payment of a fine or restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence me, hold me in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any other action necessary to obtain compliance.

If requested by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office, I agree to complete, under penalty of perjury, a financial statement provided by the U.S. Attorney's Office and to update that statement with material changes within seven days of the change. I understand that I must identify all assets and financial interests valued at more than $1,000. I further understand that these assets and financial interests include all assets and financial interests in which I have an interest, direct or indirect, whether held in my own name or in the name of another, in any property, real or personal.

I agree to surrender assets I obtained as a result of my crimes, and release funds and property

PLEA AGREEMENT  8
CR 21-0111 EMC **[UNDER SEAL]**

under my control in order to pay any fine, forfeiture, or restitution. I further agree to notify the FLU before transferring any interest in property owned directly or indirectly by me, including any interest held or owned under any other name or entity, including trusts, partnerships, and/or corporations. I also agree to notify the FLU of any interest in property I may obtain, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this Plea Agreement until the fine or restitution is paid in full.

I agree that any fine, forfeiture, or restitution imposed by the Court against me will be due immediately and subject to immediate enforcement by the government as authorized by 18 U.S.C. § 3613. I further understand that the government may seek immediate collection of the entire fine, forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office and that monetary penalties imposed by the Court will be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property I receive may be offset and applied to federal debts.

10. I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

 a. I will meet with the government when requested;

 b. I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury, or at any trial or other proceeding;

 c. I will provide all documents and other material asked for by the government;

 d. I will testify truthfully at any grand jury, court, or other proceeding as requested by the government;

 e. I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;

 f. I will request continuances of my sentencing date, as necessary, until my cooperation is completed; and

 g. I will participate in undercover activities under the supervision of law enforcement agents or the U.S. Attorney's Office.

11. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be binding on me. I

PLEA AGREEMENT
CR 21-0111 EMC **[UNDER SEAL]**
9

understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

12. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty pleas.

I agree to abide by all of the terms of my pre-trial release pending sentencing. However, I agree to be remanded to the custody of the United States Marshal at any time prior to my sentencing if requested by Pre-Trial Services, Probation or the government or as ordered by the Court.

13. If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c) I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations period has run between the date of this Agreement and the date I am indicted.

14. I agree that I personally obtained and acquired no less than $215,000 in criminal proceeds from the violation in Count One to which I am pleading guilty, and I agree to the entry of a forfeiture money judgment in that amount (the "Forfeiture Money Judgment"). I admit that the Forfeiture Money Judgment constitutes proceeds from a violation of 18 U.S.C. § 1348 and thus is forfeitable to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and the procedures outlined in Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853. I admit that because of my own acts or omissions, the proceeds I originally obtained cannot be located

upon the exercise of due diligence or have been placed beyond the jurisdiction of the Court. As such, I agree that the procedures set forth in 21 U.S.C. § 853(p)(2) are applicable.

I agree I will not contest any forfeiture proceeding that may be brought pursuant to this Agreement. I further agree to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Agreement on any ground, including that the forfeiture constitutes an excessive fine or punishment or that the forfeiture proceeding was brought in violation of any statute of limitations.

I agree to make payment to the United States of the entire amount of the Forfeiture Money Judgment. I agree that all payments I make towards the Forfeiture Money Judgment shall be made by certified or bank check, payable to the "United States" and sent by overnight delivery to the Chief of the Asset Forfeiture Unit, 450 Golden Gate Ave, 11th Floor, San Francisco, CA 94102, with the criminal docket number noted on the face of the check. I agree to assist fully the government in effecting the payment of the Forfeiture Money Judgment.

15. I agree that this Agreement contains all of the promises and agreements between the government and me, that this Agreement supersedes all previous agreements that I had with the government (including any "proffer" agreement), and I will not claim otherwise in the future. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

16. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

17. The government agrees to move to dismiss any open charges pending against the defendant in the captioned Information at the time of sentencing, unless the defendant fails to comply with any promises in this Agreement.

18. The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned Information, so long as the defendant has fully disclosed such conduct to the government and otherwise complied fully with this Agreement.

19. The government agrees to recommend a sentence no higher than the range associated with the Guidelines calculation set out in paragraph 7 above, unless the defendant fails to comply with

PLEA AGREEMENT
CR 21-0111 EMC [**UNDER SEAL**]
11

any promises in this Agreement or fails to accept responsibility. As noted in paragraph 8, the government will provide the Court with any victim impact statements as well as letters from any victims and any sentencing requests that they make to the court are not subject to any restrictions.

20. If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

The Defendant's Affirmations

21. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

22. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

23. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 3/31/2021

*Naveen Sood*
NAVEEN SOOD
Defendant

STEPHANIE M. HINDS
Acting United States Attorney

Dated: 3/31/2021

*Kyle F. Waldinger*
KYLE F. WALDINGER
Assistant United States Attorney

24. I have fully explained to my client all the rights that a criminal defendant has and all the

terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: 3/31/2021

*Joshua A. Cohen*
DocuSigned by: 0CC692D873EE4F8...
Attorney for Defendant

PLEA AGREEMENT
CR 21-0111 EMC **[UNDER SEAL]**

13